STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

07-1112


KAREN FRANCOIS

VERSUS

ACADIANA SECURITY PLUS, INC., ET AL.


**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2006-0209
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE
**********


**GLENN B. GREMILLION**
**JUDGE**


**********


Court composed of Glenn B. Gremillion, Elizabeth A. Pickett, and J. David Painter, Judges.


                                        **AFFIRMED.**




**L. Clayton Burgess**
**Lauren K. Ledet**
**P. O. Drawer 5250**
**Lafayette, LA 70502-5250**
**(337) 234-7573**
**Counsel for Plaintiff/Appellant:**
    **Karen Francois**

**Stephen J. Oats**
**Patrick B. McIntire**
**George O. Luce**
**Oats & Hudson**
**100 E. Vermilion, Suite 400**
**Lafayette, LA 70501**
**(337) 233-1100**
**Counsel for Defendant/Appellee:**
    **Acadiana Security Plus, Inc.**

GREMILLION, Judge.

The plaintiff, Karen Francois, appeals the trial court's grant of summary judgment in favor of the defendant, Acadiana Security Plus, Inc., dismissing with prejudice her claims of racial discrimination based on a hostile work environment and constructive discharge. We affirm.

**FACTS**

Francois, who is African-American, worked part-time, one day a week, as a dispatcher for Acadiana Security. On January 16, 2005, two pages of racially offensive jokes aimed at African-Americans were left on the dispatcher desk which she used. Acadian Security has a written policy against racial discrimination. Francois complained about the jokes to her supervisors, Paul Courts and Tim Begnaud, and to owner, Larry Comeaux. The identity of the employee responsible for the jokes was determined, and that employee later apologized to Francois.

On January 13, 2006, Francois filed suit against Acadiana Security seeking damages for racial discrimination/harassment and intentional/negligent infliction of emotional distress. In her petition, she relied on not only the racially-oriented jokes, but also statements made by Begnaud in which he stated, "Hey my n_____." As of that date, Francois was still employed by Acadiana Security. She resigned in March 2006, after she was contacted by Courts about dropping her lawsuit.

In response to her suit, Acadiana Security filed an answer and a motion for summary judgment arguing that Francois would be unable to prove essential elements of her claims for racial discrimination based on a hostile workplace,

1

constructive discharge, and intentional/negligent infliction of emotional distress. Following a hearing, the trial court granted summary judgment in favor of Acadiana Security and dismissed Francois' claims with prejudice. This appeal by Francois followed.

## ISSUES

On appeal, Francois argues that the trial court erred in granting summary judgment in favor of Acadiana Security and dismissing her claims for racial discrimination based on hostile work environment and constructive discharge. She does not appeal the trial court's ruling with regard to her claims for intentional/negligent infliction of emotional distress.

## SUMMARY JUDGMENT

The standard of review in summary judgment cases is well settled. La.Code Civ.P. art. 966. Pursuant to Article 966(C)(2), if the mover will not bear the burden of proof at trial, then he is only required to "point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." Upon this showing, the burden then shifts to the adverse party to produce evidence establishing "that he will be able to satisfy his evidentiary burden of proof at trial." *Id*. The threshold question in reviewing a trial court's grant of summary judgment is whether a genuine issue of material fact remains. *Kumpe v. State*, 97-386 (La.App. 3 Cir. 10/8/97), 701 So.2d 498, *writ denied*, 98-0050 (La. 3/13/98), 712 So.2d 882.

## RACIAL DISCRIMINATION

In her two assignments of error, Francois argues that the trial court erred

2

in finding that she would be unable to prove essential elements in her racial discrimination claims based on hostile work environment and constructive discharge.

In addition to the two pages consisting of eighteen racial jokes, Francois complains about statements made by Begnaud and another employee. Begnaud's statement, "Hey my n\_\_\_\_\_," was directed to Melanie Citizen, another African-American employee of Acadiana Security. Citizen related the statement to Francois after Francois complained about the racial jokes left on her desk. The other alleged racially discriminatory comment was made by Thelma, another co-worker, to Begnaud in Francois' presence. Thelma stated that she passed a Shoney's Restaurant that morning and noted that there were a hundred black people and two cop cars present. Francois stated that she thought Thelma made the comment in order to show her support for Acadiana Security.

Louisiana Revised Statutes 23:332(A) provides that it shall be unlawful for an employer to:

> (1) Intentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin.

> (2) Intentionally limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee, because of the individual's race, color, religion, sex, or national origin.

As this statute is similar to Title VII of the Civil Rights Act of 1964, Louisiana courts have availed themselves of decisions found in federal jurisprudence when interpreting claims pursuant to Section 332. *Hicks v. Cent. La. Elec. Co., Inc.*, 97-1232 (La.App.

3

1 Cir. 5/15/98), 712 So.2d 656. This includes cases dealing with sexual harassment, which are reviewed under the same standard as those pertaining to racial harassment. *Chaney v. Home Depot, USA, Inc.*, 05-1484 (La.App. 4 Cir. 8/16/06), 940 So.2d 18, *writ denied,* 06-2286 (La. 11/22/06), 942 So.2d 559.

In order to prevail on her hostile work environment claim, Francois must prove five elements: 1) she belonged to a protected group; 2) that she was subjected to harassment; 3) that the harassment was motivated by discriminatory animus (race); 4) that the harassment affected a term, condition, or privilege of employment; and 5) that the employer knew or should have known of the harassment and failed to take proper remedial action. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337 (5th Cir. 2007); *Chaney*, 940 So.2d 18. "A hostile work environment is one that does not affect an employee's economic benefits, but instead creates a hostile or offensive working environment." *Hicks*, 712 So.2d at 658.

In *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88, 118 S.Ct. 2275, 2283-84 (1998) (citations omitted), the Supreme Court explained:

> [I]n order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. We directed courts to determine whether an environment is sufficiently hostile or abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Most recently, we explained that Title VII does not prohibit "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." A recurring point in these opinions is that "simple teasing," offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment."

4

These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code." Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment and the Courts of Appeals have heeded this view.

In order to prevail on her constructive discharge claim, Francois must also prove that the working conditions were so intolerable that a reasonable person would have felt compelled to resign. *Penn. State Police v. Suders*, 542 U.S. 129, 124 S.Ct. 2342 (2004).

While we do not condone what occurred in this instance, we find the conduct of which Francois complains insufficient to constitute a hostile work environment. Although she argues that she found the list of racially-oriented jokes and the statement by her co-worker offensive, we find that these alone are insufficient to be considered objectively offensive. Mindful of the analysis laid out by the Supreme Court, we find that these isolated incidents in the approximate six years that she worked for Acadiana Security insufficiently severe, physically threatening, or humiliating enough to unreasonably interfere with an employee's work performance such that it alters the terms and conditions of her employment. We find this especially true as Francois continued in her employment for approximately fourteen months after she found the jokes. We further find that the statement, "Hey, my n_____" does not constitute racially discriminatory conduct toward Francois as it was neither directed at her nor was she present when it was uttered.

Francois' failure to prove that she was subjected to a hostile work environment further necessitates a finding that she has failed to satisfy her burden of

5

proof in her claim of constructive discharge as a finding of a hostile work environment is a precursor to such a finding. Accordingly, the judgment of the trial court is affirmed on both accounts.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed to the plaintiff-appellant, Karen Francois.

**AFFIRMED.**